UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

JOHNNY GUEVARA-VASQUEZ,

      Petitioner,

v.

KRISTI NOEM, et al.,

      Respondents.

No. 1:25-CV-258-H

## <u>ORDER</u>

Before the Court is Johnny Guevara-Vasquez's motion for a temporary restraining order or preliminary injunction (Dkt. No. 2). Guevara-Vasquez alleges that his detention without bond, pursuant to recent Board of Immigration Appeals precedent, violates the INA and his constitutional right to due process of law. Dkt. No. 2 at 8. Specifically, he contends that he "is entitled to a bond hearing under the INA" because he "was arrested in the interior [of the United States] far from the land border and years after his entry." *Id.* at 12, 22. But this argument flatly contradicts the statute's plain language and the history of legislative changes enacted by Congress. Thus, Guevara-Vasquez fails to meet the high bar for emergency relief, and the Court denies the motion.

## 1.    Background

Guevara-Vasquez is a citizen of Honduras who illegally entered the United States in 2003. Dkt. No. 2 at 8. While commuting to work "a few weeks ago," he was detained by ICE and issued a Notice to Appear charging him with entering without inspection. *Id.* at 12. On November 20, 2025, he filed a habeas petition (Dkt. No. 1) and a motion for a TRO or preliminary injunction (Dkt. No. 2), challenging his detention without bond on constitutional and statutory grounds.

2.      **Legal Standards**

Federal Rule of Civil Procedure 65 governs the issuance of injunctions and TROs. Rule 65(a)(1) provides that "[t]he [C]ourt may issue a preliminary injunction only on notice to the adverse party."  Under Rule 65(b), however, the Court may issue a TRO without notice if the moving party satisfies two requirements.  First, the moving party must present "specific facts in an affidavit or a verified complaint" clearly demonstrating "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  Second, the moving party's attorney must "certif[y] in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b)(1)(B).

Additionally, a party seeking both a TRO and preliminary injunctive relief must satisfy the four-factor standard for obtaining a preliminary injunction.  *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021).  That standard requires the party seeking relief to establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in the movant's favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest.  *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).  "[I]f a party fails to meet *any* of the four requirements, the court cannot grant the TRO or preliminary injunction."  *Speed v. America's Wholesale Lender*, No. 3:14-CV-3425, 2014 WL 4755485, at *1 (N.D. Tex. Sept. 24, 2014) (emphasis in original); *Clark v. Prichard*, 812 F.3d 991, 993 (5th Cir. 1987) (explaining that "[t]he party seeking such relief must satisfy a cumulative burden of proving each of the four elements").

3.      **Analysis**

Guevara-Vasquez fails to demonstrate a substantial likelihood of success on the merits, which is fatal to his motion for a TRO or preliminary injunction. The Court recognizes, however, that it is issuing this Order under the accelerated timeframe of a motion for emergency relief. The Court has not yet had the benefit of the government's response to the petition or the petitioner's reply. The Court will, of course, consider and finally resolve Guevara-Vasquez's petition (Dkt. No. 1) only after it has the benefit of full briefing.

A.      **Guevara-Vasquez does not show entitlement to relief under the Fifth Amendment's Due Process clause.**

Guevara-Vasquez first argues, citing *Mathews v. Eldridge*, 424 U.S. 319 (1976), that the "[r]espondents' new, radical interpretation of the INA" violates his Fifth Amendment right to due process of law. Dkt. No. 2 at 13–16. In *Mathews*, the Supreme Court articulated a three-factor balancing test for procedural due-process claims, requiring courts to balance "(1) the private interest that will be affected by the official's actions, (2) the risk of an erroneous deprivation of that private interest and the probable value, if any, that additional procedural protections would provide, and (3) the interest that the government seeks to achieve." *Sys. Contractors Corp. v. Orleans Par. Sch. Bd.*, 148 F.3d 571, 575 (5th Cir. 1998) (citing *Matthews*, 424 U.S. at 335); *see also Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982) (applying *Mathews* in the immigration context). But "the Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (citing *Demore v. Kim*, 538 U.S. 510, 523, 526–29 (2003)). Guevara-Vasquez, for his part, makes no argument as to why the Court should apply the *Mathews* test. *See* Dkt.

No. 2 at 13–16. Because the Court finds that his Fifth Amendment claim fails either way, the Court frames the following analysis under the *Mathews* factors proposed by Guevara-Vasquez.

As to the first *Mathews* factor, Guevara-Vasquez asserts a broad "interest in being free from physical detention." Dkt. No. 2 at 14 (quotation omitted). But in 2003—the year Guevara-Vasquez illegally entered the country—the Supreme Court reiterated its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526. Indeed, the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process" for more than a century. *Id.* at 523 (citing *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)).

As to the second and third *Mathews* factors, Guevara-Vasquez ties his constitutional argument to his statutory claim. *See* Dkt. No. 2 at 15–16. Under the second factor, risk of erroneous deprivation, he argues only that the respondents' position "claiming any noncitizen present in the U.S. without having been inspected by an immigration officer . . . is subject to mandatory detention without a bond hearing is the sole reason he has been and continues to be unlawfully detained." *Id.* at 15. Likewise, he argues that the third factor, the respondents' competing interests, include "enforcement of the immigration laws . . . *as [they] currently exist*." *Id.* at 16 (emphasis added).

Guevara-Vasquez thus fails to argue, much less prove, entitlement to constitutional relief independent of his statutory claim. Because Guevara-Vasquez's argument under *Mathews* turns almost entirely on his unsuccessful statutory-interpretation argument, the Court denies his procedural due-process claim for the reasons given below.

**B.    The text of the INA weighs heavily against Guevara-Vasquez's position.**

First, Guevara-Vasquez misapprehends the relevant statutory term when he argues that the application of the INA's mandatory-detention provision is limited "to the context of an arrival at a port of entry or the border, not to an arrest occurring long after the act of entry is complete." Dkt. No. 2 at 18. The mandatory-detention provision applies to "applicants for admission," not merely arriving aliens. 8 U.S.C. § 1225(b).[1] To be sure, an arriving alien is an applicant for admission: Subsection 1225(a)(1) defines applicant for admission, in part, as "[a]n alien . . . who arrives in the United States." But the same provision also defines an applicant for admission as "[a]n alien present in the United States who has not been admitted." *Id.* This is not the most intuitive definition of the term, but it is the one that Congress enacted into law. And although courts generally construe statutory terms according to their ordinary meaning, "'[w]hen a statute includes an explicit definition, [the Court] must follow that definition,' even if it varies from a term's ordinary meaning." *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008)).

Thus, given that Guevara-Vasquez is "[a]n alien present . . . who has not been admitted," the plain language of the mandatory-detention provision weighs heavily against his assertion that he is subject only to discretionary detention. § 1225(a)(1); *see also Garibay-Robledo v. Noem*, No. 1:25-CV-177, Dkt. No. 9 at 4–6 (N.D. Tex. Oct. 24, 2025) (denying reconsideration of a TRO because the petitioner was an applicant for admission under the mandatory-detention provision); *Montoya Cabanas v. Bondi*, No. 4:25-CV-4830,

---

[1] While Section 1226(c) also mandates detention for certain classes of aliens, this order refers to Sections 1225 and 1226 as the mandatory- and discretionary-detention provisions, respectively, for the sake of simplicity.

2025 WL 3171331, at *4–6 (S.D. Tex. Nov. 13, 2025) (adopting the reasoning of *Garibay-Robledo* in denying a habeas petition).

The Executive Office of Immigration Review's (EOIR) regulations, which were drafted following the Illegal Immigration Reform and Immigration Responsibility Act of 1996's (IIRIRA) enactment, confirm this understanding of the term "applicants for admission."  One such regulation provides that "*[d]espite being applicants for admission*, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination."  *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (emphasis added).  This regulation explains that "[t]he effect of this change is that inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge, while arriving aliens do not."  *Id.* The clear implication of this language is that, despite possessing the authority to deny bond to broad classes of aliens, the government previously declined to exercise the full extent of its authority under the INA.

But in July 2025 DHS issued a notice titled "Interim Guidance Regarding Detention Authority for Applicants for Admission."  *See Vazquez v. Feeley*, No. 2:25-CV-1542, 2025 WL 2676082, at *5 (D. Nev. Sept. 17, 2025) (describing the leaked DHS notice and noting that the government did not object to its authenticity).  This notice advised that "section 235 of the [INA], rather than section 236"—that is, the mandatory-detention provision, not the discretionary-detention provision—"is the applicable immigration detention authority for all applicants for admission."  *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607, Am. Immigr. Laws. Ass'n (July 8,

2025).[2]  The BIA adopted this broader application of the mandatory-detention provision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  The BIA acknowledged that "for years [IJs] have conducted bond hearings for aliens who entered the United States without inspection," but they did "not recall either DHS or its predecessor, the Immigration and Naturalization Service," ever challenging that practice.  *Id.* at 225 n.6.

    **C.**    **The statutory history of the INA supports the Court's interpretation of the mandatory-detention provision.**

"Statutory history, 'the record of enacted changes Congress made to the relevant statutory text over time,' can also provide helpful context" for interpreting statutory language.  *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023) (quoting *BNSF Ry. Co. v. Coos*, 586 U.S. 310, 329 (2019) (Gorsuch, J., dissenting) (emphasis omitted)).  And the statutory history of the INA confirms the Court's interpretation of the term "applicants for admission."

By enacting the IIRIRA, Congress sought to replace the so-called entry doctrine, in which the manner of immigration proceedings turned on whether an alien had entered the country, with a process based on admission.  *See Martinez v. Att'y Gen.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012) ("Prior to the [IIRIRA], the INA assessed status on the basis of 'entry' as opposed to 'admission.'").  Under the entry doctrine, an alien who had entered the United States was entitled to greater procedural protections, including a deportation hearing.  *Id.* The result was a system that rewarded aliens who illegally entered the country with greater procedural protections than those who properly applied for admission at the border.

---

[2] https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX].

Thus, the IIRIRA amended the INA to make admission, not entry, the relevant criterion for removal procedures. *Id.* The INA defines admission as "the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). By defining "applicants for admission" broadly enough to encompass both arriving aliens and illegal entrants, Congress removed the previously existing incentives to enter the country illegally.

**D.    Guevara-Vasquez's remaining arguments are not persuasive.**

Guevara-Vasquez's primary textual argument is that, for the INA's mandatory-detention provision to apply, he must be more than an "applicant for admission"; he must be actively "seeking admission" as well. Dkt. No. 2 at 17–19 (citing 8 U.S.C. § 1225(b)(2)(A)). Under Guevara-Vasquez's interpretation, aliens may illegally enter the United States and receive heightened protections under the INA, provided that they never actively seek to be admitted. This interpretation "unambiguously limits [section 1225's] application to the context of an arrival at a port of entry or the border, not to an arrest occurring long after the act of entry is complete." *Id.* at 18.

The Court first notes that this argument collapses the exact admission-based distinction IIRIRA sought to introduce through its expansive definition of "applicants for admission." *See supra* Analysis § 3(C).

Second, the way that the INA uses the term "seeking admission" illustrates that it is merely a corresponding gerund phrase for "applicant for admission." Subsection 1225(a)(3) provides that "[a]ll aliens . . . [w]ho are applicants for admission *or otherwise seeking admission* . . . shall be inspected." (emphasis added). Subsection 1225(a)(5) states that "[a]n applicant for admission may be required to state under oath any information sought by an

immigration officer regarding the purposes and intentions of the applicant *in seeking admission* to the United States." (emphasis added).[3] The logical import of this phrasing is that one who is an applicant for admission is considered to be "seeking admission" under the statute.

Guevara-Vasquez cites a handful of cases that attempted to distinguish an "applicant for admission" from an alien "seeking admission." Dkt. No. 2 at 18 n.16. But this distinction places form over substance. There is no material disjunction—by the terms of the statute or the English language—between the concept of "applying" for something and "seeking" something. Black's Law Dictionary defines "applicant" as "[s]omeone who requests something; a petitioner, such as a person who applies for letters of administration." (12th ed. 2024). Thus, an applicant for admission, in ordinary English usage, is one who requests (or seeks) something. Insofar as the term "applicant for admission" is more passive than "seeking admission," this is inherent in the nature of agent nouns and their corresponding gerunds.

Finally, Guevara-Vasquez argues that his reading of the INA is bolstered by the recent passage of the Laken Riley Act. *See* Dkt. No. 2 at 19–21. "[T]he government's new interpretation of the detention provisions," he contends, "renders the recently enacted Laken Riley Act . . . entirely superfluous and devoid of any meaning whatsoever." *Id.* at 19. But as Judge Charles Eskridge explains in *Montoya Cabanas v. Bondi*, "prior Administrations

---

[3] Had Congress conceived of the statutory category for which Guevara-Vasquez argues—the applicant for admission not seeking admission—it is especially curious that Subsection 1225(a)(5) does not instead say "[a]n applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant *if* seeking admission to the United States." As enacted, the subsection's phrase, "in seeking admission," admits of no Schrödinger's alien—one who does not seek the very admission for which he is an applicant.

for decades applied [the discretionary-detention provision] to individuals like [the] [p]etitioner," and therefore "at the time of enactment, the Laken Riley Act *did* have [real] effect, given that it *required* mandatory detention for criminal, inadmissible aliens who had not been subject to it . . . by longstanding practice of prior Administrations."   No. 4:25-CV-04830, 2025 WL 3171331, at *6 (S.D. Tex. Nov. 13, 2025).

The Court recognizes that many courts have concluded that this broader interpretation of the mandatory-detention provision renders certain subsections of Section 1226 superfluous.  But even granting this argument, superfluity alone is an insufficient basis to depart from the clear text of the statute.  The Supreme Court "has often recognized [that] '[s]ometimes the better overall reading of [a] statute contains some redundancy.'"  *Barton v. Barr*, 590 U.S. 222, 239 (2020) (quoting *Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019)).  More to the point, "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text."  *Id.*  Indeed, the canons of statutory construction should only "be used to resolve remaining ambiguity," not to inject it where it does not exist.  *Moore*, 71 F.4th at 395.

## 4.   Conclusion

In light of the above facts and authorities, the Court denies Guevara-Vasquez's motion for a TRO and a preliminary injunction (Dkt. No. 2).  He fails to carry his burden to show a significant likelihood of success on the merits.  Guevara-Vasquez's habeas petition (Dkt. No. 1) remains pending.

So ordered on November 25, 2025.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE